UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MISSOURI-AMERICAN WATER COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>RIVER CITY CONSTRUCTION, LLC,<br><br>Defendant. | Case No. _____<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiffs, MISSOURI-AMERICAN WATER COMPANY ("MAWC") alleges the following against Defendant, RIVER CITY CONSTRUCTION, LLC ("River City"):

**THE PARTIES**

1. MAWC is a Missouri corporation with its principal place of business and operations in the State of Missouri. MAWC maintains an office in St. Louis, Missouri. At all times relevant hereto, MAWC owned and operated the Missouri-American Water Company North County Water Treatment Plant located at 2800 Charbonier Road, Florissant, Missouri 63033 (the "Property"). MAWC is a subsidiary of AWW.

2. MAWC owned and operated the Missouri-American Water Company North County Water Treatment Plant located at 2800 Charbonier Road, Florissant, Missouri 63033.

3. River City is an Illinois limited liability company with its principal place of business and operations in East Peoria, Illinois, with each of its members, upon information and belief, Leanne Skuse, Eric Bursott, Kent Kampwerth, and Michael Cullinan, being domiciled in Illinois. At all times relevant hereto, River City, an independent contractor, served as the

1

design/builder responsible for work generally described as designing, constructing, renovating, starting-up, commissioning, turning over, and warranting facilities for the North County Water Treatment Plant — Chemical Systems Improvements project (the "Work").

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) as the amount in controversy for each Plaintiff exceeds $75,000.00, and the Plaintiff and Defendant are citizens of different States.

5. Venue is proper in this District and Division as the events giving rise to this litigation occurred Florissant, Missouri.

## GENERAL ALLEGATIONS

6. At all times relevant hereto, MAWC owned and operated the Missouri-American Water Company North County Water Treatment Plant located at 2800 Charbonier Road, Florissant, Missouri 63033 (the "Property"). The Missouri-American Water Company North County Water Treatment Plant provides drinking water to its customers in St. Louis County, Missouri.

7. On April 15, 2014, MAWC and River City entered into a Design-Build Agreement that required River City, as Design/Builder to install a new sludge line under an existing basin, the East Basin (the "Project").

8. On or about July 30, 2015, within just five months after River City's installation work on a sludge line with an expected decades-long useful lifespan, approximately 45 feet of the East Basin collapsed resulting in catastrophic damage to the basin and causing enormous amounts of water (approximately 8,000,000 to 10,000,000 gallons) to escape the basin in an approximately two-hour period causing a massive flood (the "Water Loss").

9. River City was the design-build contractor for the Project. As the designer and builder, River City was responsible, expected, and required to do its work in an appropriate, careful, dependable and effective manner to ensure its design, engineering, construction and improvements were suitable for safe use, fit for service and not pose, create or present any avoidable or preventable dangers, hazards or risks, and that River City's design, engineering and construction work, services, workmanship and deliverables fully satisfied, fulfilled and conformed to all applicable industry standards, codes, and best practices.

10. River City was an independent contractor.

11. In Article 11 of the Design-Build Agreement, River City made representations and promises to induce MAWC to enter into the agreement, including:

   a. River City has examined and carefully studied the "Contract Documents," as defined in the Design-Build Agreement;

   b. River City has visited the Site and become familiar with and is satisfied as to the general, local, and Site conditions that may affect cost, progress, and performance of the Work;

   c. River City is familiar with and is satisfied as to all federal, state, and local Laws and Regulations that may affect cost, progress, and performance of the Work;

   d. River City carefully studied all: (1) reports of explorations and tests of subsurface conditions (if any) at or contiguous to the Site and all drawings of physical conditions in or relating to existing surface or subsurface structures at or contiguous to the Site which have been identified or made available by Owner.

12. River City was also obligated to make "chemical system improvements," including "[c]onstruction of new chemical facilities buildings, chemical storage and feed modifications, a new continuous sampling system and analyzers, and automation of sedimentation basin underflow/sludge blowdown …."

13. River City represented, promised and assured MAWC that River City visited the site, was familiar with the site conditions, and that it would comply with and abide by all applicable local laws and regulations.

14. River City was solely responsible for the means, methods, techniques, sequences, and procedures of its construction of the new sludge line.

15. The construction of the chemical system improvements was not to impact existing operations of the Plant, and River City's work on the East Basin was performed while the Plant was out of service.

16. Prior to River City's work, detectable voids and certain subsurface conditions existed underneath the East Basin.

17. River City bored tunnels underneath the East Basin as pathways for pipe installation, with some tunnels as long as 100 yards.

18. River City had never performed tunnel boring underneath a water basin prior to the work at the Plant.

19. Prior to performing work at the Plant, River City had not used its boring equipment on a job for a customer.

20. River City was expected and required to "[o]btain such additional geotechnical and related information which it deems necessary for performance of the Work."

21. Several methods existed and were available to River City, prior to River City's work on the East Basin, to identify voids and other subsurface conditions, including soil drilling, ground penetrating radar, impact echo, and infrared thermography. Ground penetrating radar, impact echo, and infrared thermography are non-destructive methods.

22. Under the terms of the Design-Build Agreement, River City is fully responsible to MAWC for all acts and omissions related to the construction work, and that agreement requires River City to indemnify and hold harmless MAWC from damages (including attorneys' fees) arising out of or resulting from the performance of the construction work, including loss of use, to the extent caused by any negligent act or omission of River City.

23. On July 30, 2015, it was discovered that water was escaping from the East Basin.

24. The escaping water initially leaked from the outside of the northeast corner of the East Basin.

25. Leakage occurred at or near the installed sludge lines at the base of the slope at the northeast end of the East Basin where River City had bored into the soil tunnels for four pipes that River City installed below the East Basin.

26. Water also bubbled from a boring tunnel River City had created through the earthen dike at the northeast corner of the East Basin

27. During the evening of July 30, 2015, an approximately 45-foot section of the East Basin wall collapsed.

28. After the collapse, all the water—8- to 10-million gallons—drained from the East Basin during an approximately two-hour period.

29. The water drained from the East Basin as a result of the collapse of the 45-foot section of wall.

30. The photographs below are true and accurate depictions of the East Basin after the collapse of the wall:





31.     After the East Basin drained, a portion of the East Basin floor was found to have collapsed.

32.     The water bubbling from one of the boring tunnels, the collapse of the wall, and the discovery of the collapsed floor indicated that the water escaped through the floor of the East Basin, flowed through the boring tunnels, and exited through an earthen dike while eroding soil.

33.     Water from the East Basin escaped the Plant and flowed toward the Missouri River.

6

34. Water that escaped the basin caused the collapse of a road adjacent to the East Basin, destroyed a fence, and caused other damage to the Plant.

35. The sudden leakage of water from the East Basin washed away the east end of the north slope of the East Basin and eroded the soil beneath the East Basin walls and the East Basin.

36. The sudden soil erosion caused settlement of slabs of the floor of the East Basin.

37. After the collapse of the East Basin wall, tension cracks were present in the side slopes of the East Basin, and the East Basin wall settled.

38. River City's negligent, careless and reckless performance of its work caused the collapse of the East Basin wall.

39. River City's negligent, careless and reckless performance of its work caused the collapse of the East Basin floor.

40. After the collapse of the wall and removal of floor slabs in the failed area, a large void beneath the East Basin was revealed.

41. The void was approximately 10-feet wide at its widest point at or near the base of the north wall and was approximate three to four feet deep at its deepest points.

42. Voids were foreseeable as potentially existing under a porous water basin and need to be accounted for prior to performing tunnel boring underneath a water basin in order to eliminate or minimize the disturbance or destabilization of voids and soil in such a manner as to affect the structural integrity of the basin.

43. River City failed to undertake an adequate, proper, and thorough investigation or survey of the soil conditions underneath the East Basin prior to boring the tunnels underneath the East Basin.

44. Section 1803.3 of the International Building Code states:

> 1803.3 Basis of Investigation.
>
> Soil classification shall be based on observation and any necessary tests of the materials disclosed by borings, test pits or other subsurface exploration made in appropriate locations. Additional studies shall be made as necessary to evaluate slope stability, soil strength, position and adequacy of load-bearing soils, the effect of moisture variation on soil-bearing capacity, compressibility, liquefaction and expansiveness.

45. River City failed to undertake such investigation or survey in compliance with Section 1803.3 of the International Building Code prior to boring the tunnels underneath the East Basin.

46. River City used bentonite, a clay, as a tunnel sealant.

47. Bentonite expands when exposed to water.

48. After River City installed bentonite as a tunnel sealant underneath the East Basin, from which water naturally seeped, the bentonite expanded.

49. The expansion of the bentonite installed by River City disturbed the sub-surface conditions beneath the East Basin, including the soil and any voids that existed beneath the East Basin.

50. By moving, loosening, and otherwise disturbing sub-surface soil, which destabilized the soil and the East Basin, River City's boring and use of bentonite altered the sub-surface conditions beneath the East Basin, created dangerous conditions, and exacerbated foreseeable, knowable site conditions, resulting in the collapse of the East Basin.

## **COUNT I – NEGLIGENCE**

51. Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 50 as if fully stated.

52. At all relevant times, River City, individually, and through its agents and employees, performed work on the North County Water Treatment Plant – Chemical Systems Improvements project.

53. At all relevant times, River City had a duty to exercise ordinary and reasonable care in the performance, execution, management, supervision, coordination, and control of its work so as not to cause injury to, damage to, obstruction of, or impairment of the Property.

54. At all relevant times, River City had a duty to exercise ordinary and reasonable care in connection with its work so as not to compromise the structural integrity of the northeast slope wall of the East Basin, causing its collapse.

55. At all relevant times, River City owed Plaintiffs a duty to perform work in a skillful, careful, workmanlike, and prudent manner in accordance with applicable standards and ordinances.

56. Notwithstanding the aforementioned duties, and in breach thereof, River City, by and through its employees and agents, committed one or more of the following negligent acts or omissions during the Project:

    a. failed to perform its work with reasonable care so as to prevent the collapse of the northeast slope wall of the East Basin;

    b. failing to perform work and other construction work underneath the East Basin in a skillful, workmanlike, reasonable and prudent manner;

    c. failed to observe applicable safety standards and practices in performing its work and other construction work underneath the East Basin in a skillful, workmanlike, reasonable and prudent manner;

    d. failed to comply with and adhere to local codes and/or ordinances;

e. failed to make adequate and reasonable inspections of the work site, work performance, maps, and drawings so as to ensure that the work was being performed properly and safely;

f. failed to ensure the structural capacity of the sludge line and the northeast slope wall of the East Basin was sufficient for the loads and pressure River City designed the sludge lines to handle;

g. failed to ensure that the integrity of the northeast slope wall of the East Basin was not compromised before or during the work on the Project;

h. failed to discover the void(s) under the East Basin and take into account the effects of those voids on River City's tunnel boring;

i. failed to discover that the East Basin was not watertight and that water from the basin would leak into River City's boring tunnels and cause soil erosion;

j. failed to properly seal the boring tunnels it created to prevent soil erosion in or around those tunnels to the outside of the East Basin;

k. failed to use due care and safety in the Project design;

l. failed to use due care and safety in performing its work;

m. failed to supervise the sludge line installation to ensure the as-built condition matched the engineering design and specifications;

n. failing to take all necessary and reasonable precautions so as to prevent work performed by River City employees, agents, contractors or subcontractors from causing damage to the Property;

o. failed to undertake a geotechnical investigation and survey into the soil conditions underneath the East Basin prior to boring tunnels; and

p. failed to undertake a geotechnical investigation and survey into the soil conditions underneath the East Basin prior to boring tunnels, in non-compliance with Section 1803 of the International Building Code.

10

57. As a direct and proximate result of one or more of the aforementioned negligent acts or omissions by River City, River City caused the collapse of the northeast slope wall of the East Basin.

58. As a direct and proximate result of one or more of the aforementioned negligent acts or omissions by River City, water escaped from the East Basin causing catastrophic flooding at the Property.

59. As a direct result of the conduct described herein, Plaintiffs suffered impairment of, injury to, obstruction of, and damages to its property and to its business.

60. River City knew or should have known that a high probability existed that its conduct would result in substantial harm to the Property and/or Plaintiff.

61. River City showed wanton disregard for Plaintiff and Plaintiff's property.

62. River City breached its duties owed to Plaintiff.

63. As a direct and proximate result of one or more of River City's careless, reckless and grossly negligent acts, Plaintiff has sustained, and continues to sustain, damages.

64. River City's acts and omissions included conduct that was careless, reckless, egregious, grossly negligent, and in conscious disregard of the duties and responsibilities owed to Plaintiff and for the protection of Plaintiff's property.

65. WHEREFORE, Plaintiff requests that judgment be entered in its favor and against Defendant River City Construction, LLC as follows:

    a. judgment against River City in excess of $75,000.00;

    b. awarding all actual, consequential, and compensatory damages sufficient to compensate Plaintiff for River City's negligence;

    c. awarding Plaintiff post-judgment interest; and

      d. awarding such other and further relief as this Court may deem just and proper.

## COUNT II – NEGLIGENCE *PER SE*

66. Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 65 as if fully stated.

67. At all relevant times, River City, individually, and through its agents, and employees, performed work on the North County Water Treatment Plant – Chemical Systems Improvements project.

68. At all relevant times, River City had a duty to exercise ordinary and reasonable care in the performance, execution, management, supervision, coordination, and control of its work so as to comply with the International Building Code and not cause injury to the Property.

69. At all relevant times, River City failed to undertake a geotechnical investigation and survey into the soil conditions underneath the East Basin prior to boring tunnels, in non-compliance with Section 1803 of the International Building Code as adopted by St. Louis County as part of the county building code.

70. River City should have undertaken, at a minimum, geotechnical investigations capable of determining subsurface conditions, such as a ground penetrating radar survey, in order to identify voids underneath the East Basin prior to performing its boring work.

71. River City's failure to undertake such investigation or survey violated the St. Louis County Building Code and the minimum standard of care for this type of boring work.

72. WHEREFORE, Plaintiff requests that judgment be entered in its favor and against Defendant River City Construction, LLC as follows:

      a. judgment against River City in excess of $75,000.00;

    b. awarding all actual, consequential, and compensatory damages sufficient to compensate Plaintiff for River City's negligence;

    c. awarding Plaintiff post-judgment interest; and

    d. awarding such other and further relief as this Court may deem just and proper.

## COUNT III – GROSS NEGLIGENCE

73. Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 to 72 above, as fully set forth within.

74. At all relevant times, River City owed Plaintiff a duty to perform work in a skillful, careful, workmanlike, and prudent manner in accordance with applicable standards and ordinances.

75. River City knew or should have known that a high probability existed that its conduct would result in substantial harm to the Property and/or Plaintiff.

76. River City showed wanton disregard for Plaintiff and Plaintiff's property.

77. River City's conduct constitutes gross negligence.

78. River City breached its duties owed to Plaintiff.

79. As a direct and proximate result of one or more of River City's grossly negligent acts, Plaintiff has sustained, and continues to sustain, damages.

80. River City's acts and omissions included conduct that was careless, reckless, egregious, grossly negligent, and in wanton and conscious disregard of the duties and responsibilities owed to Plaintiff and for the protection of Plaintiff's property.

WHEREFORE, Plaintiff requests that this Court enter judgment in its favor and against River City as follows:

    a. awarding all actual, consequential, and compensatory damages in an amount in excess of $75,000 that is sufficient to compensate Plaintiff for River City's negligence;

    b. awarding Plaintiff pre- and post-judgment interest; and

    c. awarding such other and further relief as this Court may deem just and proper.

## **COUNT IV – BREACH OF CONTRACT**

81. Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 to 80 above, as fully set forth within.

82. Pursuant to the Design-Build Agreement, including specifically but not limited to Article 11 – DESIGN/BUILDER'S REPRESENTATIONS, River City promised and represented the following, which Plaintiff was entitled to, expected to receive from, and relied upon River City that it:

    a. had examined and carefully studied the "Contract Documents," as defined in the Design-Build Agreement;

    b. had visited the Site and become familiar with and is satisfied as to the general, local, and Site conditions that may affect cost, progress, and performance of the Work;

    c. was familiar with and is satisfied as to all local ordinances that may affect cost, progress, and performance of the Work;

    d. had carefully studied all: (1) reports of explorations and tests of subsurface conditions (if any) at or contiguous to the Site and all drawings of physical conditions in or relating to existing surface or subsurface structures at or contiguous to the Site which have been identified or made available by MAWC; and

    e. was to perform work, known generally as "chemical system improvements": Construction of new chemical facilities buildings, chemical storage and feed modifications, a new continuous sampling system and analyzers, and automation of sedimentation basin underflow/sludge blowdown ….

83. River City, its employees, agents, servants, subcontractors and/or representatives breached the contract by:

   a. not examining and carefully studying the "Contract Documents," as defined by the Design-Build Agreement;

   b. not becoming familiar with the Property and satisfied with the general, local, and Property's conditions that may affect cost, progress, and performance of the Work;

   c. not being familiar with and satisfying all local ordinances that may affect cost, progress, and performance of the Work;

   d. not carefully studying all: (1) reports of explorations and tests of subsurface conditions (if any) at or contiguous to the Site and all drawings of physical conditions in or relating to existing surface or subsurface structures at or contiguous to the Site which have been identified or made available by MAWC;

   e. failed to undertake a geotechnical investigation and survey into the soil conditions underneath the East Basin prior to boring tunnels;

   f. failed to undertake a geotechnical investigation and survey into the soil conditions underneath the East Basin prior to boring tunnels, in non-compliance with Section 1803 of the International Building Code; and

   g. other ways that may be learned during discovery.

84. As a direct and proximate result of River City' breach of the contract, Plaintiff suffered damages.

WHEREFORE, Plaintiff requests that this Court enter judgment in their favor and against River City as follows:

   a. awarding all actual, consequential, and compensatory damages in an amount in excess of $75,000 that is sufficient to compensate Plaintiff for River City's negligence;

   b. awarding Plaintiff pre- and post-judgment interest; and

    c.  awarding such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff, Missouri-American Water Company, respectfully demands a trial by jury of all issues so triable.

Dated: September 15, 2021    By: *Robert L. King*
                                       Robert L. King MO Bar #39478
                                       The Law Office of Robert L. King
                                       9648 Olive Blvd., Suite 224
                                       St. Louis, Missouri 63132
                                       king@kinglaw.com
                                       Phone: (314) 441-6580

                                       -and-

Dean S. Rauchwerger (*pro hac vice* to be filed)
Geoffrey M. Waguespack (*pro hac vice* to be filed)
Butler Weihmuller Katz Craig LLP
115 S. LaSalle St., Suite 3200
Chicago, Illinois 60603
drauchwerger@butler.legal
gwaguespack@butler.legal
Phone Number: (312) 456-0900
Fax Number: (312) 456-0909

*Attorneys for Plaintiff Missouri American Water Company*

16